HARRY SHERMAN v. THE BOARD OF SUPERVISORS OF SANILAC COUNTY.

*Taxes—Law of 1889—Fees of county clerk.*

A county clerk presented a claim to the board of supervisors for fees for issuing subpœnas to delinquent tax-payers under the tax law of 1889 (Act No. 195), and for moneys paid the register of deeds for searches in his office to ascertain the names of such owners, which claim was rejected; and in denying a *mandamus* to compel its allowance it is held:

 *a*—There is no provision of law entitling the clerk to such *fees*, nor is he required to make such searches.

 *b*—The claim of relator is not one which the board of supervisors can be compelled to audit and allow, although, upon a proper showing, the board may be required to act under section 100 of said tax law, and determine what amount of compensation, if any, the relator shall receive for his services under the law, and how it shall be paid.

*Mandamus.* Submitted December 2, 1890. Denied December 24, 1890.

Relator applied for *mandamus* to compel the allowance of certain fees earned and expenses incurred as county clerk under the tax law of 1889. The facts are stated in the opinion.

*E. C. Babcock* and *E. F. Bacon*, for relator.

CAHILL, J. This is an application for a *mandamus* to require the board of supervisors of Sanilac county to audit and allow relator certain sums as his fees and expenses as county clerk, acting as register in chancery, in the matter of the petition of the Auditor General, filed under section 52 of the tax law of 1889 (Act No. 195, 3 How. Stat. p. 2936).

It appears that, on the hearing of said petition in the

circuit court for the county of Sanilac, in chancery, a decree was entered on April 30, 1890, in favor of the State, against certain lands described in the petition, for the taxes assessed on said lands, together with the fees and expenses incurred by certain officers in relation thereto; that, among other fees so included, were the clerk's fees, acting as register in chancery in issuing the subpœnas to the delinquent tax-payers, and also for certain disbursements made by the clerk for searches to ascertain who were the owners of the lands, that the clerk might know against whom to issue such subpœnas. There was taxed by the court, and assessed against each parcel of land the owner of which was personally served with subpœna, and who allowed a decree to pass against his land, the sum of one dollar, to cover the clerk's fees and disbursements. These amounted, in the aggregate, on 669 descriptions, to $669. This amount, relator says, has already passed to a decree in favor of the State, and that, of this amount, $308 has actually been collected, and is now in the hands of the county treasurer, while the balance of $361 is included in the sums for which certain of the lands were bid in to the State, and are now subject to redemption at the Auditor General's office. In addition to the foregoing items, relator claims that he performed the same services, and made the same disbursements, in relation to other descriptions of land on the Auditor General's tax record, against which no decree was rendered, or, if rendered, which did not include the item of one dollar for his fees and expenses, because no personal service of subpœna could be made; that the total amount of the fees and expenses due him on account of such descriptions is the sum of $229.25, to which add the item first referred to, $669, and we have a total claimed by relator of $898.25.

Relator presented his claim for the above amount to

the board of supervisors on November 10, 1890. The claim was referred to a committee, which reported adversely to the allowance of it, on the ground that they could find no law authorizing its payment. The report of the committee was accepted and adopted, and the board adjourned *sine die.*

Upon these facts, the questions presented are whether there is any provision of law which entitles the relator to the fees and disbursements claimed by him, and, if so, then is his claim against the county such a one as we can compel the board of supervisors to audit and allow?

As to the first point, we are not cited to any express provisions of law which give the clerk fees for issuing the subpœnas in tax cases. Section 53 of the tax law of 1889 prescribes the fees of the officer who serves the subpœna, but makes no express provision for the clerk. Section 75 of the statute provides that—

"All compensation of county officers and expense incurred by them under the provisions of this act shall be paid by the county."

Section 100 provides that—

"County officers shall be paid for services under this act, by salary, or otherwise, *as the board of supervisors shall determine.*"

It is not claimed by the relator that the board of supervisors of his county has acted under section 100, and determined how he should be paid for his services under the tax law, nor that the board has declined to act.

The county clerk is the *ex officio* clerk of the circuit court. How. Stat. § 577, provides that the county clerk—

"Shall receive for all services *rendered the county in criminal cases, and as clerk of the circuit court,* and for his services as clerk of the board of supervisors and as clerk of the board of county and district canvassers, such

salary as the board of supervisors may fix; for his services in civil cases, and other matters, such fees and compensation as shall be provided by law."

By section 6592, it is provided that the several circuit courts shall be courts of chancery, the powers of which shall be exercised by the circuit judges. By section 6594, the clerk of the circuit court is *ex officio* register in chancery. Construing these various sections together, it seems clear that section 577 is broad enough to cover all services "rendered the county" as clerk of the circuit court, whether on the law or the chancery side.

It is said by relator's counsel that this tax law is a new statute passed since relator's salary was fixed by the board; that it requires of him extraordinary services, not contemplated when his salary was fixed; that the tax law clearly contemplates that he shall have compensation for such services. This is a consideration that might well be addressed to the board of supervisors, upon whom the Constitution and laws devolve the duty of fixing the salary or compensation of the clerk. Const. Art. 10, § 10; How. Stat. § 483, subd. 9; Tax Law of 1889, § 100, *supra*. We cannot give this suggestion any weight. The salaries of public officers do not go up and down according as the law places more or less duties on them. When one accepts a county office, he knows that the salary must, by the Constitution, be fixed by the board of supervisors, and that no other authority has any power over it. If, after trial, he becomes satisfied that the salary is too small for the services required, the statute allows him to resign. How. Stat. § 647. While he holds the office, however, he must perform its duties, and every willful neglect to do so is punishable as a misdemeanor. How. Stat. § 9259.

It is said that no provision is made in the statute for ascertaining the name or place of residence of the delin-

quent tax-payer against whom subpœna is to issue, nor for compensation to the clerk or other officers for making a search for that purpose; that the best way of ascertaining the name and residence of the delinquent tax-payer is by a search of the records in the office of the register of deeds; and that the relator has caused such search to be made, and has incurred in so doing an actual expense of $239, which he has paid, or is liable for. But there is no provision in the tax law requiring the clerk to search the records to ascertain who is the owner of the lands on the tax record, nor to incur any expense in so doing. There is ground for saying that the tax law requires amendment in this respect. The purpose of the statute being to collect the public revenues, no doubt that would be greatly facilitated by giving notice to the person actually interested in the land at the time the proceedings to enforce the lien are commenced, if practicable; but, to accomplish this, the statute will require amendment. In tax proceedings, the officers cannot assume duties not required of them by law, and charge the expense thereof against the tax-payer. Section 53 provides that—

" All fees and expenses incurred by *virtue of this section* shall be a charge against the real estate on account of which the same were incurred."

As the only fees or expenses provided for in such section are those earned or incurred by the officer in making service, it would seem that only such fees and expenses could be charged against the land. This last question, however, is not involved here, and we do not decide it. We allude to it only because it may merit the attention of the Legislature. If it is desirable to fix the clerk's fees, and to make them a charge against delinquent lands, the statute should so provide.

The relator's claim is not such a one as the board of

supervisors can be compelled to audit and allow, although, upon a proper showing, the board may be required to act under section 100 of the tax law, and to determine what amount of compensation, if any, the relator shall receive for his services under such law, and how it shall be paid.

The *mandamus* as prayed must be denied.

CHAMPLIN, C. J., LONG and GRANT, JJ., concurred.
MORSE, J. I concur in the result.